**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**IN RE THE APPLICATION OF
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS FOR
ACCESS TO CERTAIN SEALED COURT
RECORDS**

No. _____

Related Case No.
18-cr-0067 (WMW)

---

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE APPLICATION OF THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS FOR ACCESS TO
CERTAIN SEALED COURT RECORDS**

Leita Walker
Shannon A. Jankowski
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: 612.766.7000
Fax: 612.766.1600
leita.walker@FaegreBD.com
*Counsel of Record for Applicant the Reporters
Committee for Freedom of the Press*

Bruce D. Brown*
Katie Townsend*
Linda Moon*
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Fax: 202.795.9310
*Of Counsel for Applicant the Reporters
Committee for Freedom of the Press*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. I

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................................... 6

   I.    The press and the public have a strong interest in access to the sealed Search Warrant
Materials, PR/TT Materials, and Section 2703(d) Materials. ............................................ 6

   II.   The press and the public have a constitutional and common law right to access the sealed
Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials. ................... 8

        A.    The First Amendment and common law rights of access apply to the Search
Warrant Materials. ................................................................................................ 9

        B.    The First Amendment and common law rights of access apply to the Section
2703(d) and PR/TT Materials. ............................................................................ 11

   III.   The press and the public have both a constitutional and common law right of access to the
court dockets reflecting the Search Warrant Materials, PR/TT Materials, and Section
2703(d) Materials. ........................................................................................................... 16

   IV.   The Government cannot meet its burden to overcome the presumption of access to the
Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials. ................. 17

        A.    The government cannot demonstrate a compelling interest that justifies the
continued sealing of the Search Warrant, Section 2703(d), and PR/TT Materials.
................................................................................................................................ 17

        B.    The government cannot overcome the common law presumption in favor of
disclosure of the Search Warrant, Section 2703(d), and PR/TT Materials. .......... 17

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 960 F. Supp. 2d 1011 (D. Minn. 2013) ............ ......................................................................................................................... 9, 10, 18

*CBS, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 765 F.2d 823 (9th Cir. 1985) ........... 16

*Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corp. v. Pulitzer Pub. Co.*, 895 F.2d 460 (8th Cir. 1990) .................................................. 10

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ...................................................... 16

*F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987) ............................................. 7

*Flynt v. Lombardi*, 885 F.3d 508 (8th Cir. 2018) ......................................................... 9

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ................................................. 16

*IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) ...................................................... passim

*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011) ......................................................................... 14

*In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 13-mc-460 (AK) (D.D.C. May 7, 2013) ..................................................................... 8

*In re Neal*, 461 F.3d 1048 (8th Cir. 2006) .................................................................. 10

*In re Newsday, Inc.,* 895 F.2d 74 (2d Cir. 1990) ........................................................ 11

*In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012) ...................................................... 11

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ......................................................................................................................... passim

*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283 (4th Cir. 2013) ...... .................................................................................................... 13, 14, 15, 16

*Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324 (4th Cir. 1991) ........ 11, 18

*Matter of Search Warrants Issued on June 11, 1988, for the Premises of Three Buildings at Unisys, Inc.*, 710 F. Supp. 701 (D. Minn. 1989) ........................................................ 11

*Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978). ................................................................ 8, 18

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) ...................................................... 6, 17

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) .......................................................... 8, 17

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ................................................ 6, 7

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ................................................................................ 6

*Skky, LLC v. Facebook, Inc.*, 191 F. Supp. 3d 977 (D. Minn. 2016) ......................................... 14

*Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647 (7th Cir. 1992) ........................... 7

*Tri-Cty. Wholesale Distributors, Inc. v. Wine Grp., Inc.*, 565 F. App'x 477 (6th Cir. 2012) ....... 16

*U.S. v. El-Sayegh,* 131 F.3d 158 (D.C. Cir. 1997) ..................................................................... 12

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) ...................................................................... 7

*United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188 (9th Cir. 2011)
......................................................................................................................................... 11

*United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998) ..................................................... 12

*United States v. Rogers*, No. 13-cr-130 (ADM) (JJG), 2013 WL 5781610
(D. Minn. Aug. 2, 2013) ................................................................................................... 17

## Statutes

18 U.S.C. § 2703(d) ............................................................................................................ passim

18 U.S.C. § 3123 ............................................................................................................... 13, 15

18 U.S.C. §§ 2701–2712 ........................................................................................................ 1, 5

18 U.S.C. §§ 3121–3127 ........................................................................................................ 1, 5

## Rules

Fed. R. Crim. P. 41 .................................................................................................................. 12

**Other Authorities**

Charlie Savage and Mitch Smith, *Ex-Minneapolis F.B.I. Agent Is Sentenced to 4 Years in Leak Case,* N.Y. Times, Oct. 18, 2018, https://www.nytimes.com/2018/10/18/us/politics/terry-albury-fbi-sentencing.html ........................................................................................ 4

Erik Wemple, *Seizing Journalists' Records:  An Outrage That Obama 'Normalized' For Trump,* Wash. Post, June 8, 2018, https://www.washingtonpost.com/blogs/erik-wemple/wp/2018/06/08/seizing-journalists-records-an-outrage-that-obama-normalized-for-trump/?utm_term=.9f2eb3e2b219 ............................................................................. 8

Glen Greenwald and Betsy Reed, *Secret Docs Reveal:  President Trump Has Inherited an FBI with Vast Hidden Powers,* Intercept, Jan. 31, 2017, https://theintercept.com/2017/01/31/secret-docs-reveal-president-trump-has-inherited-an-fbi-with-vast-hidden-powers/ ........................... 3

Laura Yuen, *Ex-FBI Agent Faces Sentence Thursday For Leaking Files,* Minn. Pub. Radio News, Oct. 16, 2018, https://www.mprnews.org/story/2018/10/16/ex-fbi-agent-faces-sentence-thursday-for-leaking-files ..................................................................................... 3

Maggie Astor, *Former FBI Agent Admits He Shared Classified Documents,* N.Y. Times, Apr. 17, 2018, https://www.nytimes.com/2018/04/17/us/politics/fbi-leaker-terry-albury.html ............... 3

Mukhtar M. Ibrahim, *Federal Documents Outline Steps FBI Took to Investigate One of Its Own,* Minn. Pub. Radio News, Mar. 29. 2018, https://www.mprnews.org/story/2018/03/29/document-search-warrant-application-for-minneapolis-fbi-agent-records ...................................................................................... 5

OIG, *A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009 — Executive Summary* at 1 (June 2015), https://oig.justice.gov/reports/2015/o1506.pdf ......................................................... 5

Steve Karnowski, *Former Minnesota FBI Agent Cites Racism in Explaining Leak,* Fox News, Apr. 17, 2018, https://www.foxnews.com/us/former-minnesota-fbi-agent-cites-racism-in-explaining-leak ............................................................................................................. 4

*Terry J. Albury, Former FBI Agent in Minneapolis, Accused of Leaking Files to Media,* CBS News, Mar. 29, 2018, https://www.cbsnews.com/news/terry-j-albury-ex-minneapolis-fbi-agent-accused-of-leaking-files-to-media/ ................................................................. 4

## PRELIMINARY STATEMENT

The Reporters Committee for Freedom of the Press (the "Reporters Committee" or "RCFP") seeks access to certain sealed court records concerning the completed "leak" investigation and related criminal prosecution of Terry J. Albury ("Albury") (the "Albury Matter"). Specifically, the Reporters Committee seeks an order unsealing any and all applications and supporting documents, including affidavits, seeking any of the following; any court orders granting or denying any of the following; and any other court records related to the following, such as returns, motions to seal, dockets, and docket entries:

- any search warrant, regardless of whether the warrant was issued or executed, and including warrants under the Stored Communications Act ("SCA"), *see* 18 U.S.C. §§ 2701–2712, that relates to the Albury Matter (collectively, the "Search Warrant Materials");

- authorization for the use of any pen register or trap and trace device pursuant to 18 U.S.C. §§ 3121–3127, regardless of whether such authorization was granted or a pen register or trap and trace device was used, that relates to the Albury Matter (collectively, the "PR/TT Materials"); and

- any order pursuant to 18 U.S.C. § 2703(d) of the SCA, regardless of whether or not the order was issued or executed, that relates to the Albury Matter (collectively, the "Section 2703(d) Materials").

Contrary to the constitutional and common law presumptions of public access to court records, court filings of this type are routinely maintained under seal indefinitely, and are generally not reflected on publicly available dockets. Accordingly, the Reporters Committee

1

does not know the case number(s) associated with the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials it seeks to unseal.

The United States government's prosecution of Albury for disclosing classified national defense information to a member of the news media was and remains the subject of intense public interest. Unsealing the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials will shed light on the government's investigation and prosecution of Albury, which has now concluded, and will also provide the public and the press with valuable insight into the government's approach to so-called "leak" investigations and prosecutions more generally. In particular, unsealing of these materials will help inform the press and the public about the government's use of electronic surveillance tools like PR/TT devices and Section 2703(d) orders in connection with such investigations.

## FACTUAL BACKGROUND

**I.     The government's investigation and prosecution of Albury for disclosing information to a member of the news media.**

From in or about August 2012 through in or about August 2017, Albury was employed as Special Agent of the Federal Bureau of Investigation ("FBI")'s Minneapolis Field Office and was also assigned as an airport liaison working on counterterrorism and other matters with Customs and Border Protection ("CBP") at the Minneapolis/St. Paul International Airport, during which time he held a Top Secret/Sensitive Compartmented Information security clearance and had access to national defense and classified information. *See* Plea Agreement and Sentencing Stipulation ¶ 2a, *United States v. Albury*, No. 18-cr-67 (WMW) ("*Albury*") (D. Minn. Apr. 17, 2018), ECF No. 16 ("Plea Agreement").

In April 2018, Albury pled guilty in this Court to one count of unauthorized disclosure of national defense information, and one count of unauthorized retention of national defense

information, both in violation of 18 U.S.C. § 793(e).  *See id.* ¶ 1; Information, *Albury* (D. Minn. Mar. 27, 2018), ECF No. 1 ("Information").  The Court accepted Albury's guilty plea and, on October 18, 2018, sentenced him to 48 months' imprisonment for each of the aforementioned charges, to be served concurrently, and ordered him to pay a $200 assessment.  *See* Sentencing Sheet, *Albury* (D. Minn. Oct. 18, 2018), ECF No. 42.

Albury stipulated to the fact that he transmitted information in classified documents to a reporter, who is identified in the Plea Agreement as "Reporter A."  Plea Agreement ¶ 2k.  The information that Albury transmitted to Reporter A, between February 2016 and January 31, 2017, relates to FBI's assessment of "Confidential Human Sources," and "threats posed by certain individuals from a particular Middle Eastern country."  Information ¶ 1.

On January 31, 2018, the Intercept posted documents fitting the description of those Albury was charged with unlawfully transmitting to a reporter, and published a story on the FBI's procedures for recruiting informants.  *See* Glen Greenwald and Betsy Reed, *Secret Docs Reveal:  President Trump Has Inherited an FBI with Vast Hidden Powers,* Intercept, Jan. 31, 2017, https://theintercept.com/2017/01/31/secret-docs-reveal-president-trump-has-inherited-an-fbi-with-vast-hidden-powers/; *see also* Maggie Astor, *Former FBI Agent Admits He Shared Classified Documents,* N.Y. Times, Apr. 17, 2018, https://www.nytimes.com/2018/04/17/us/politics/fbi-leaker-terry-albury.html; Josh Gerstein, *Feds Seek 4-Year-Plus Sentence for FBI Agent in Leak Case,* Politico, Oct. 5, 2018, https://www.politico.com/blogs/under-the-radar/2018/10/05/fbi-leaker-the-intercept-charges-871459; Laura Yuen, *Ex-FBI Agent Faces Sentence Thursday For Leaking Files,* Minn. Pub. Radio News, Oct. 16, 2018, https://www.mprnews.org/story/2018/10/16/ex-fbi-agent-faces-sentence-thursday-for-leaking-files.

Albury also pled guilty to the charge of retaining documents relating to "the use of an online platform for recruitment by a specific terrorist group" between April 7, 2017 and August 28, 2017.  Information ¶ 2.  During a search of Albury's residence on August 29, 2017, the government recovered more than 50 documents, including 35 containing classified information, from a thumb drive that was wrapped in an envelope with Reporter A's telephone number affixed to it.  *See* Government's Sentencing Mem. at 3, *Albury* (D. Minn. Oct. 4, 2018), ECF No. 35; Plea Agreement ¶ 2g.

The government's investigation and prosecution of Albury under the Espionage Act for disclosing information to a member of the news media has been a subject of intense public interest and extensive media coverage.  *See, e.g.*, *Terry J. Albury, Former FBI Agent in Minneapolis, Accused of Leaking Files to Media,* CBS News, Mar. 29, 2018, https://www.cbsnews.com/news/terry-j-albury-ex-minneapolis-fbi-agent-accused-of-leaking-files-to-media/; Steve Karnowski, *Former Minnesota FBI Agent Cites Racism in Explaining Leak,* Fox News, Apr. 17, 2018, https://www.foxnews.com/us/former-minnesota-fbi-agent-cites-racism-in-explaining-leak; Charlie Savage and Mitch Smith, *Ex-Minneapolis F.B.I. Agent Is Sentenced to 4 Years in Leak Case,* N.Y. Times, Oct. 18, 2018, https://www.nytimes.com/2018/10/18/us/politics/terry-albury-fbi-sentencing.html.

## II.    Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials related to the Albury Matter remain under seal.

Documents filed with the Court in the Albury prosecution indicate that the government sought and obtained at least one search warrant in connection with the Albury Matter.  The government may have also obtained additional search warrants, including warrants under the

SCA, pen register or trap and trace orders,[1] and/or Section 2703(d) orders[2] from the district court in the course of its investigation of Albury.

On March 29, 2018, Minnesota Public Radio News reported that it had obtained a previously sealed affidavit filed in support of a search warrant for Albury's residence. Mukhtar M. Ibrahim, *Federal Documents Outline Steps FBI Took to Investigate One of Its Own,* Minn. Pub. Radio News, Mar. 29. 2018, https://www.mprnews.org/story/2018/03/29/document-search-warrant-application-for-minneapolis-fbi-agent-records. However, the search warrant materials referenced in the Minnesota Public Radio News article remain inaccessible to the public via the Court's electronic docket. *See United States v. Search Warrant,* 17-mj-670 (DTS) (D. Minn.), ECF Nos. 1-3.

The Reporters Committee is not aware of any other search warrants, orders authorizing the use of pen registers and/or trap and trace devices, Section 2703(d) orders, or any applications or other materials related thereto, connected to the Albury Matter that have been unsealed. The Reporters Committee therefore requests that any and all such court records—including dockets and docket sheets—be unsealed, and that, to the extent necessary to facilitate such unsealing, the

---

[1]     Pen registers and trap and trace devices are law enforcement surveillance tools the use of which is governed by 18 U.S.C. §§ 3121–3127 (the "Pen Register Act" or "PRA"). "Pen registers record telephone numbers, e-mail addresses, and other dialing, routing, addressing, or signaling information that is transmitted by instruments or facilities—such as telephones or computers—that carry wire or electronic communications." OIG, *A Review of the FBI's Use of Pen Register and Trap and Trace Devices Under the Foreign Intelligence Surveillance Act in 2007 through 2009 — Executive Summary* at 1 (June 2015), https://oig.justice.gov/reports/2015/o1506.pdf. "Trap and trace devices record similar information that is *received* by such instruments or facilities." *Id.* (emphasis added).

[2]     Under 18 U.S.C. § 2703 of the Stored Communications Act ("SCA"), a court may issue an order authorizing the government to require electronic communication service or remote computing service providers to disclose the contents of a subscriber or consumer's wire or electronic communications in electronic storage for more than 180 days and certain communications metadata related to a subscriber or customer. 18 U.S.C. § 2703(a), (b)(1), (c)(1)-(2).

U.S. Attorney's Office be directed to provide a list of the specific case numbers associated with the applications and orders sought to be unsealed by this Application.

## **ARGUMENT**

I.    **The press and the public have a strong interest in access to the sealed Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

Openness is "an indispensable attribute" of our judicial system.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980).  It guards against unfairness and inequity in the application of laws, as "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known."  *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*").  And, perhaps just as importantly, access also "bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings," and "to keep a watchful eye on the workings of public agencies."  *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (internal quotation marks and citations omitted).  "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."  *Richmond Newspapers*, 448 U.S. at 572.

The U.S. Supreme Court has recognized that the news media plays a vital role in facilitating public monitoring of the judicial system.

> A responsible press has always been regarded the handmaiden of effective judicial administration, especially in the criminal field. . . . The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).  Thus, "[w]hile media representatives enjoy the same right of access as the public," they often "function[] as surrogates for the public" by, for

example, attending proceedings, reviewing court documents, and reporting on judicial matters to the public at large. *Richmond Newspapers*, 448 U.S. at 573.

For these reasons, it is well-settled that the public and the press have a right of access to court documents, generally, that arises from the public's interest in observing the consideration and disposition of matters by federal courts. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("*In re Gunn*") (listing federal appellate decisions recognizing first amendment right of public access to pre-trial and non-trial proceedings in criminal and civil cases).

The public's right of access is especially strong in matters, like the Albury Matter, that concern actions taken by the executive branch. As the U.S. Court of Appeals for the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. United States Dist. Court for S. Dist.*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)) ("*Smith*"); *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (stating the "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch").

Further, the press and the public have a particularly powerful interest in obtaining access to the specific court records that are the subject of this Application. The government routinely uses search warrants, orders authorizing the use of pen registers and trap and trace devices, and Section 2703(d) orders in leak investigations and prosecutions, and they raise particular concerns when they are used to obtain journalists' communications records. *See, e.g.,* Erik Wemple, *Seizing Journalists' Records: An Outrage That Obama 'Normalized' For Trump,* Wash. Post,

June 8, 2018, https://www.washingtonpost.com/blogs/erik-wemple/wp/2018/06/08/seizing-journalists-records-an-outrage-that-obama-normalized-for-trump/?utm_term=.9f2eb3e2b219; *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 13-mc-460 (AK) (D.D.C. May 7, 2013), ECF No. 1 (The government's application for a Section 2703(d) order seeking a reporter's email records from Google in connection to a leaks investigation of a former FBI agent, Donald John Sachtleben).  Public access to any such court records related to the Albury Matter will provide the public and the press with much-needed insight into the government's pursuit of leak investigations in general, and the Albury Matter, specifically.

## II.     The press and the public have a constitutional and common law right to access the sealed Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.

Whether the First Amendment affords a right of access to a document at any particular stage in the criminal process turns on considerations of "experience and logic," *i.e.* (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*")(citations omitted); *In re Gunn,* 855 F.2d at 573.  If both questions are answered affirmatively, the constitutional right of access applies.  *See id*.  Where the First Amendment right of public access applies, a document may be sealed only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to that interest."  *In re Gunn,* 855 F.2d at 574 (internal quotation marks and citations omitted).

The common law also affords a public right of access to judicial records and documents in both civil and criminal cases.  *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978); *IDT*

*Corp.*, 709 F.3d at 1222 (listing cases).  "The primary rationales for this right are the public's confidence in, and the accountability of, the judiciary."  *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (citing *IDT Corp.,* 709 F.3d at 1222).  However, the common law right of access is also a qualified right, which requires a weighing of competing interests.  The district court "must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed."  *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 960 F. Supp. 2d 1011, 1013 (D. Minn. 2013) (quoting *IDT Corp.,* 709 F.3d at 1223).  The weight given to the presumption of access depends on the "role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts."  *Id.*  (quoting *IDT Corp.,* 709 F.3d at 1224).

### A.    The First Amendment and common law rights of access apply to the Search Warrant Materials.

#### 1.   *The public has a First Amendment right of access to the Search Warrant Materials.*

The Eighth Circuit has held that there is a First Amendment right of access to search warrant materials.  *See In re Gunn*, 855 F.2d at 573.  Applying the experience and logic test, the court found first that search warrant applications and supporting materials are judicial records and documents, which "have been historically considered to be open to inspection by the public." *Id.*  The court noted that, "although the process of issuing search warrants has traditionally not been conducted in an open fashion, the search warrant applications and receipts are routinely filed with the clerk of court without seal."  *Id.*  Second, the court found that logic favors access to search warrant materials, because access to these materials is "important to the public's

understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Id.* The court also found it significant that, although "not part of the criminal trial itself, like voir dire, a search warrant is certainly an integral part of criminal prosecution." *Id.*

Although the Eighth Circuit in *In re Gunn* ultimately held that restricting public access to the search warrant materials in that case was warranted by a compelling government interest— the ongoing nature of the investigation at issue—no such compelling interest exists here, as the investigation and prosecution of Albury has concluded. *Id.* at 574; *see also Certain Interested Individuals, John Does I-V, Who Are Employees of McDonnell Douglas Corp. v. Pulitzer Pub. Co.*, 895 F.2d 460, 466-467 (8th Cir. 1990) ("We believe that the procedural posture of the government's criminal investigation must be considered in the balancing process," and "[t]his opinion in no way restricts appellees from . . . seeking disclosure . . . , after indictment, of the wiretap information contained in the search warrant materials or other judicial documents.")

2. <u>*The public has a common law right of access to the Search Warrant Materials.*</u>

In addition, the public has a common law right of access to the Search Warrant Materials. As the Eighth Circuit expressly found in *In re Gunn,* search warrants, warrant applications, supporting affidavits, court orders, and returns are judicial records to which the common law right of access applies. *See* 855 F.2d at 573. The presumption of access is especially strong where, as here, "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts" is significant, *Aviva Sports, Inc.*, 960 F. Supp. 2d at 1013, and "only the most compelling reasons can justify non-disclosure" of such records or documents, *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (internal quotation marks and citation omitted).

10

Other federal courts of appeals have likewise almost uniformly found that search warrant materials—particularly those from closed investigations like the Albury Matter—are judicial records to which the common law right of access applies.  *See In re Search of Fair Finance*, 692 F.3d 424, 433 (6th Cir. 2012); *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1192 (9th Cir. 2011); *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d 324, 330 (4th Cir. 1991) (recognizing the public's common law right of access to a search warrant affidavit before trial and finding that the public had "significant interests" in access, and "[i]n the context of the criminal justice system, these interests may be magnified."); *In re Application of Newsday, Inc.,* 895 F.2d 74, 79 (2d Cir. 1990) (a search warrant application is "a public document subject to a common law right of access" at the post-investigation stage).

  **B.** **The First Amendment and common law rights of access apply to the Section 2703(d) and PR/TT Materials.**

   1. *The public has a First Amendment right of access to the Section 2703(d) and PR/TT Materials.*

The Section 2703(d) Materials and PR/TT Materials at issue here are analogous to search warrant materials from closed investigations.  As discussed above, the Eighth Circuit has held that search warrant materials are subject to the First Amendment right of access.  *See In re Gunn*, 855 F.2d at 573; *see also Matter of Search Warrants Issued on June 11, 1988, for the Premises of Three Buildings at Unisys, Inc.*, 710 F. Supp. 701, 704 (D. Minn. 1989) (emphasizing that, while "the government's ongoing investigation may constitute a compelling interest in sealing portions of the documents," "the need for secrecy would diminish as time passed and public knowledge of the nature of the investigation increased").  And, applying the experience and logic test, the First Amendment right of access applies to the Section 2703(d) Materials and PR/TT Materials as well.

First, the tradition of public access to post-investigation search warrant materials applies to the Section 2703(d) Materials and PR/TT Materials.  Because the Section 2703(d) and PR/TT Materials are analogous to search warrant materials, they should be evaluated by this same historic tradition of access.  *See In re Gunn*, 855 F.2d at 573 (finding that search warrant materials are judicial records and documents that "have been historically considered to be open to inspection by the public"); *see also, U.S. v. El-Sayegh,* 131 F.3d 158, 161 (D.C. Cir. 1997) (stating that "[a] new procedure that substituted for an older one would presumably be evaluated by the tradition of access to the older procedure"); *United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998) (noting that the experience prong may be satisfied by establishing a history of access to information "reasonably analogous" to the information sought).

Second, as with post-investigation search warrants, logic strongly supports a First Amendment right of access to the Section 2703(d) and PR/TT Materials at issue here.  *See In re Application of N.Y. Times*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) ("Specifically, with respect to warrants, openness plays a significant positive role in the functioning of the criminal justice system, at least in the post-investigation stage.").  Indeed, because Section 2703(d) orders and orders authorizing the use of PR/TT devices function like warrants  by allowing the government to obtain an individual's electronic communications records, but may be obtained on a showing *lower* than the probable cause standard that must be satisfied to obtain a search warrant under Federal Rule of Criminal Procedure 41, *see* 18 U.S.C. § 2703(d) and 18 U.S.C. § 3123(a)(1), access to such materials arguably plays an even *more* "significant positive role in the functioning of the criminal justice system."  *In re Application of N.Y. Times Co.,* 585 F. Supp. 2d at 90.[3]

---

[3]  Orders authorizing the installation and use of PR/TT devices may be obtained *ex parte* by the government on a certification that "the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation."  18 U.S.C. § 3123(a)(1).  A Section

Access to the Section 2703(d) and PR/TT Materials at issue here will allow the public to scrutinize the arguments the government put forth in support of their applications for any Section 2703(d) orders and orders authorizing the use of PR/TT devices it sought in connection with its investigation of Albury, as well as the basis for any court order granting or denying such applications. Thus, access will allow the public to serve as a check on "prosecutorial or judicial misconduct," *In re Gunn*, 855 F.2d at 573, and provide" a measure of accountability to the public at large, which pays for the courts." *IDT Corp.,* 709 F. 3d at 1222; *see also In re Gunn*, 855 F.2d at 573.

To date, no federal court of appeals has squarely addressed the question of whether the First Amendment right of access applies to Section 2703(d) orders in the context of a closed investigation. The only federal court of appeals to address access to Section 2703(d) orders, the Fourth Circuit, did so in the context of an ongoing criminal investigation and concluded that the First Amendment right of access did not apply in that context. *In re United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 292 (4th Cir. 2013) ("*Appelbaum*"). In that case, petitioners sought access to Section 2703(d) orders and related documents at the "pre-grand jury phase of an ongoing criminal investigation." *Id.* at 286. Again, in contrast, there is no ongoing investigation here; Albury was charged by information, pled guilty, and was sentenced. Accordingly, *Appelbaum* is distinguishable.

---

2703(d) order may be issued "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

2.   <u>*The public also has a common law right of access to the Section 2703(d) and PR/TT Materials.*</u>

The common law right of access also applies to the Section 2703(d) and PR/TT Materials.  Plainly, Section 2703(d) orders and orders authorizing the use of PR/TT devices, as well as any subsequent, related court orders, are judicial records and documents.  *See, e.g., Appelbaum* 707 F.3d at 290 ("[I]t is commonsensical that judicially authored or created documents are judicial records").  Keeping with this principle, courts have held that the common law right of access attaches to Section 2703(d) orders, as well as orders authorizing the use of PR/TT devices.  *See id.* at 290 (stating that the court had "no difficulty holding that the actual § 2703(d) orders and subsequent orders issued by the court are judicial records"); *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 830 F. Supp. 2d 114, 151–52 (E.D. Va. 2011) (applying the common law right of access balancing test to materials related to a Section 2703(d) order); *In re Sealing & Non-Disclosure of PR/TT/2703(D) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) (writing that "opinions, orders, judgments, docket sheets, and other information related to the court's public functions" are in the "top drawer of judicial records" that are "hardly ever closed to the public").  Accordingly, the Section 2703(d) orders, orders authorizing the use of PR/TT devices, and any subsequent, related court orders issued in connection with the Albury Matter are judicial records subject to a strong presumption of access under the common law.

In addition, just as applications and supporting affidavits for search warrants are judicial records, applications and supporting affidavits for Section 2703(d) orders and orders authorizing the use of PR/TT devices are likewise judicial records because, among other things, they are considered by the court in determining whether to issue the order being sought by the government.  *See Skky, LLC v. Facebook, Inc.*, 191 F. Supp. 3d 977, 980 (D. Minn. 2016)

14

(judicial records include "documents that are submitted to the Court and that form the basis for judicial decisions") (citations omitted); *see also Appelbaum*, 707 F.3d at 290 (holding that motions filed under Section 2703(d) were judicial records because they were filed with the objective of obtaining judicial action or relief pertaining to Section 2703(d) orders). Section 2703(d) provides that a court shall issue a Section 2703(d) order "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe" the communications records that will be obtained "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Thus, the applications and supporting affidavits form the basis for the court's determination of whether the government has met the statutory standard for issuance of a Section 2703(d) order, which is "essentially a reasonable suspicion standard." *Appelbaum*, 707 F.3d at 287. Likewise, before a court enters an order authorizing the installation and use of a pen register or trap and trace device, it must conclude that "the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1). The government's application thus plays a decisive role in the court's determination as to whether use of a PR/TT device should be authorized or a Section 2703(d) order issued.

Finally, motions related to Section 2703(d) orders and PR/TT orders other than applications also play a key role in the adjudicatory process and therefore are judicial records. Such derivative motions are filed with the objective of obtaining judicial action or relief, and the court relies upon such filings in granting or denying the relief sought. Consistent with this reasoning, the Fourth Circuit has held that derivative Section 2703(d) motions are judicial records because they play a role in the adjudicative process; namely, "they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders." *Appelbaum*, 707

F.3d at 291.  For these reasons, any derivative Section 2703(d) and PR/TT motions are judicial

records to which the common law right of access applies.

III.    **The press and the public have both a constitutional and common law right of access to the court dockets reflecting the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

Both the constitutional and common law rights of access extend to court dockets

reflecting court records or proceedings related to search warrants, PR/TT devices, and Section

2703(d) orders.  The common law right extends to dockets because sealing dockets in their

entirety creates a "two-tier system, open and closed," that erodes "[c]onfidence in the accuracy

of [the court's] records" and "the authority of its rulings and respect due its judgments."  *CBS,*

*Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 765 F.2d 823, 826 (9th Cir. 1985); *see also In re*

*Gunn,* 855 F.2d at 575 ("The case dockets maintained by the clerk of the district court are public

records.") (citation omitted).  In addition, several Circuits have recognized that the constitutional

right of access extends to court dockets.  *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83,

93–94 (2d Cir. 2004) (holding that docket sheets in civil and criminal proceedings "enjoy a

presumption of openness and that the public and the media possess a qualified First Amendment

right to inspect them"); *Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (holding that

there is a First Amendment right of access to docket sheets in civil proceedings); *Tri-Cty.*

*Wholesale Distributors, Inc. v. Wine Grp., Inc*., 565 F. App'x 477, 490 (6th Cir. 2012) ("The

First Amendment access right extends to court dockets, records, pleadings, and exhibits . . .").

The public and the press therefore have a constitutional right of access to the docket sheets

reflecting the Search Warrant, Section 2703(d), and PR/TT Materials at issue here.

**IV.    The Government cannot meet its burden to overcome the presumption of access to the Search Warrant Materials, PR/TT Materials, and Section 2703(d) Materials.**

   **A.    The government cannot demonstrate a compelling interest that justifies the continued sealing of the Search Warrant, Section 2703(d), and PR/TT Materials.**

A document to which the First Amendment right of access applies may remain under seal only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise II*, 478 U.S. at 13–14 (quoting *Press–Enterprise I*, 464 U.S. at 510); *see also United States v. Rogers*, No. 13-cr-130 (ADM) (JJG), 2013 WL 5781610, at *5 (D. Minn. Aug. 2, 2013).

Because the government's investigation and prosecution of Albury has concluded, there can be no compelling interest in the continued sealing of any Search Warrant, Section 2703(d), and PR/TT Materials.  Moreover, even assuming *arguendo* that the government could identify some compelling interest that justified sealing some portion of the Search Warrant, Section 2703(d), or PR/TT Materials, redaction—not wholesale sealing—would be warranted.  *See Press-Enterprise I*, 464 U.S. at 510 (closure of records must be narrowly tailored to serve the compelling government interest); *In re Gunn,* 855 F.2d at 575 (before permitting the sealing of a document, the district court must find that "less restrictive alternatives [we]re impracticable"); *IDT Corp.,* 709 F.3d at 1225 (vacating the district court's order denying the motion to unseal and remanding the case to determine whether redaction of confidential business information was practicable).

   **B.    The government cannot overcome the common law presumption in favor of disclosure of the Search Warrant, Section 2703(d), and PR/TT Materials.**

Under common law, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value

of such information to those monitoring the federal courts." *Aviva Sports, Inc.*, 960 F. Supp. 2d at 1013 (quoting at *IDT Corp.,* F.3d at 1224). The court balances the weight of the presumption against "the salutary interests served by maintaining confidentiality of the information sought to be sealed." *Id.* (quoting *IDT Corp.,* F.3d at 1223).

Applying this standard, the Search Warrant, Section 2703(d), and PR/TT Materials should be unsealed. First, the public interest in access to the Search Warrant, Section 2703(d), and PR/TT Materials is exceptionally strong, and a substantial weight must be given to the presumption of access. As the Eighth Circuit has recognized, an important interest served by access to information is enabling citizens "to keep a watchful eye on the workings of public agencies." *IDT Corp.*, 709 F.3d at 1222 (quoting *Nixon,* 435 U.S. at 598). The sealed materials at issue here are sought for that purpose. Specifically, the materials would inform the public's understanding of the Albury Matter, one of a number of high-profile leak prosecutions pursued by the government under the current Administration. The Albury prosecution and investigation were the subjects of considerable public attention, and the public has "legitimate concerns about methods and techniques of [that] . . . investigation," *Matter of Application and Affidavit for a Search Warrant*, 923 F.2d at 330, including how the government obtained and used any search warrants, Section 2703(d) orders, and pen registers and trap and trace devices. *See also Nixon*, 435 U.S. at 597–98 (recognizing two "interest[s] necessary to support the issuance of a writ of compelling access": public oversight of public agencies and an intention to publish information concerning the operation of government).

Second, there are minimal—if any—interests in maintaining the secrecy of these court documents. As explained above, there is no ongoing investigation; the Albury prosecution has concluded, and Albury has been sentenced. Moreover, none of the court records at issue are

being sought for an improper purpose.  The Reporters Committee seeks access to these materials

for the benefit of the press and public at large.  In addition, much of the information relating to

Albury's prosecution—and, as noted above, at least one search warrant affidavit filed by the

government—are already in the public forum.  The public knows that Albury was charged for

allegedly disclosing national defense information to a journalist, and that he pled guilty.

Accordingly, even though the Search Warrant, Section 2703(d), and PR/TT Materials are sealed,

much of their underlying subject matter is in the public forum, weighing in favor of disclosure.

In sum, because the common law balancing test weighs heavily in favor of disclosure and

no factors weigh against disclosure, the Court should grant the Reporters Committee's

Application to unseal the Search Warrant, Section 2703(d), and PR/TT Materials.

## CONCLUSION

The Court should, for the foregoing reasons, grant the Reporters Committee's

Application for an order unsealing the Search Warrant, Section 2703(d), and PR/TT Materials.

19

Dated: October 31, 2018

Respectfully submitted,

*/s/ Leita Walker*
Leita Walker #387095
Shannon A. Jankowski #399281
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: 612.766.7000
Fax: 612.766.1600
leita.walker@FaegreBD.com
*Counsel of Record for Applicant the Reporters*
*Committee for Freedom of the Press*

Bruce D. Brown*
Katie Townsend*
Linda Moon*
THE REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Fax: 202.795.9310
*Of Counsel for Applicant the Reporters*
*Committee for Freedom of the Press*

20